IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Doosan Bobcat North America, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> John Doe 1-5, <br><br> Defendants. | Case No. 1:24-cv-00152 |

**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER**

[¶1]   THIS MATTER comes before the Court on a Motion for Temporary Restraining Order filed by the Plaintiff on August 14, 2024. Doc. 8. The Motion is supported by the declarations of Doosan's employee, and Attorney Mark Lefkow, pursuant to Federal Rule of Civil Procedure 65, and Plaintiff's Complaint for Damages and Injunctive Relief. Plaintiff seeks a temporary restraining order ("TRO") pursuant to Rule 65(b). For the reasons set forth below, the Motion for Temporary Restraining Order is **GRANTED**.

BACKGROUND

[¶2]   The findings in this order are not final and subject to revision based upon the evidence as it comes in during the pendency of this case. Plaintiff is headquartered in North Dakota. Doc. No. 8-2, p. 5. Plaintiff conducted business with Shin Il Precision Co., Ltd. and Shin Il Global (collectively "Shin Il"), two suppliers located in South Korea. Doc. No. 8-2, p. 1. In connection with the business relationship between Doosan and Shin Il, Doosan communicated with different people from Shin Il, with email addresses ending with @shinil-brg.com. Id. On December 19, 2023, Doosan's accounting department received an email from a person who appeared to be a

Sales Team Manager at Shin Il, from the email account nckim@shinil-brg.com, instructing Doosan to make future payments through ACH to a bank account with the Bank of America, account number xxxxxxxx9292 (the "BOA Account"). Id. at p. 2; Doc. No. 8-3, pp. 1-2.

[¶3]   Pursuant to the fraudulent ACH Instructions, Doosan made five payments to the BOA Account. On December 23, 2023, Doosan Sent $97,710 to the BOA Account via ACH; on February 8, 2024, Doosan sent $81,760 to the BOA Account via ACH; on March 7, 2024, Doosan sent $89,450 to the BOA Account via ACH; and on March 21, 2024, Doosan sent $166,950 to the BOA Account via ACH. Id. at pp. 2-3. Doosan sent a total of $520,350 to the BOA Account (the "ACH Transfers"). Id. at p. 3; Doc. No. 8-4.

[¶4]   On March 26, 2024, Doosan's accounting department received an email from the same person who appeared to be a Sales Team Manager at Shin Il, from the email account nckim@shinil-brg.com, inquiring about future payments to Shin Il. Doc. No. 8-2, p. 3. After inquiring about the future payments, the person who appeared to be a representative of Shin Il stated that Shin Il experienced a glitch with its account with Bank of America, and instructed Doosan to make future payments through ACH (the "ACH Instructions") to a bank account with JPMorgan Chase Bank, account number xxxxx6375 (the "Chase Account 6375"). Id. at p. 3; Doc. No. 8-3, pp. 3-6.

[¶5]   Pursuant to these fraudulent ACH Instructions, Doosan made four payments to the Chase Account 6375. On March 28, 2024, Doosan sent $85,640 to the Chase Account 6375; on April 11, 2024, Doosan sent $176,510 to the Chase Account 6375; on April 18, 2024, Doosan sent $ 92,520 to the Chase Account 6375; and on May 2, 2024, Doosan sent $84,250 to the Chase Account 6375. Doc. No. 8-2, pp. 3-4. Doosan sent a total of $438,920 to the Chase Account 6375 (the "ACH Transfers"). Id. at p. 4; Doc. No. 8-4.

[¶6]    On May 21, 2024, Doosan's accounting department received an email from the same person who appeared to be a Sales Team Manager at Shin Il, from the email account nckim@shinil-brg.com, representing that they experienced a glitch with their Chase Account 6375, and instructing Doosan to make future payments through ACH to a bank account with JPMorgan Chase Bank, account number xxxxx7378 (the "Chase Account 7378"). Doc. Nos. 8-2, p. 4, 8-3, pp. 7-10.

[¶7]    On May 29, 2024, Doosan's accounting department received an email from the same person who appeared to be a Sales Team Manager at Shin Il, from the email account nckim@shinil-brg.com, representing that they were experiencing some issues with the Chase Account 7378, and instructing Doosan to make future payments through ACH to a bank account with JPMorgan Chase Bank, account number xxxxx5152 (the "Chase Account 5152"). Doc. Nos. 8-2, pp. 4-5, Doc. 8-3, pp. 11-12.

[¶8]    Pursuant to this fraudulent ACH Instructions, Doosan made one payment to the Chase Account 5152. On June 6, 2024, Doosan sent $92,390 to the Chase Account 5152 via ACH. Doc. Nos. 8-2, p. 5, 8-4.

[¶9]    After making these payments, Doosan learned that the BOA Account, Chase Account 6375, Chase Account 7378, and Chase Account 5152 did not belong to the intended beneficiary of funds for the contemplated business transactions, Shin Il. Doc. No. 8-2, p. 5. The ACH Instructions were false. Id. As a result, Shin Il did not receive the funds sent by Doosan, and Plaintiff does not know the identity of the owner of the BOA Account, the Chase Account 6375, the Chase Account 7378, and the Chase Account 5152. Doc. No. 8-2.

[¶10]   The Complaint alleges claims for violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), for fraud, for money had and received, for civil conspiracy, and for permanent injunctive relief against the accountholder and other parties to the alleged fraud.

[¶11] As to the need for *ex parte* nature of the relief Plaintiff seeks, the Declaration of Mark Lefkow, counsel for Plaintiff, is submitted as Exhibit 4 to the Motion for TRO. As set forth in that declaration, in light of the complex nature of the scheme involved, giving prior notice of the TRO to Defendants or banks holding funds from the fraud will likely result in the funds going beyond or further beyond the reach of the parties and Court process. Doc. No. 8-5.

## DISCUSSION

### I. Standard of Review

[¶12] Rule 65(b) of the Federal Rules of Civil Procedure, governs the issuance of *ex parte* temporary restraining orders:

> (b) Temporary Restraining Order.
>
> (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P 65(b).

[¶13] The purpose of *ex parte* temporary restraining orders is to preserve the *status quo* pending a hearing. Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 438-39 (1974); Carroll v. Princess Anne, 393 U.S. 175, 180 (1968). The limited nature of *ex parte* remedies:

> reflect[s] the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. Ex parte temporary restraining orders are no doubt necessary in certain circumstances, cf. Carroll v. President and Comm'rs of Princess Anne, 393 U.S. 175, 180 (1968), but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

Granny Goose Foods, 415 U.S. at 438-39 (emphasis in original).

[¶14]   Rule 65(b) directs the Court to look to the specific facts shown by sworn testimony to determine whether immediate and irreparable injury, loss, or damage will result to the applicant. In addition, the Court is required to balance the factors set forth in Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981): "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." See also Heartland Academy Community Church v. Waddle, 335 F.3d 684 (8th Cir. 2003) (same).

## II. Likelihood of Success on the Merits

[¶15]   The likelihood of success on the merits is "the most important" factor when determining whether to issue injunctive relief. Craig v. Simon, 980 F.3d 614, 617 (8th Cir. 2020) (quoting Shrink Mo. Gov't PAC v. Adams, 151 F.3d 763, 764 (8th Cir. 1998)). This factor is met where there is a "strong likelihood that [Plaintiffs] will prevail when the case is heard on the merits." Shrink Mo., 151 F.3d at 764.

[¶16]   The Court must consider the substantive claims in determining whether Plaintiff has a likelihood of success on the merits. Plaintiff asserts claims for civil RICO, fraud, unjust enrichment, constructive trust, civil conspiracy, and injunctive relief against John Does 1 through 5. Plaintiff asserts that John Doe 1 is the owner of the BOA Account, John Doe 2 is the owner of the Chase Account 6375, John Doe 3 is the owner of Chase Account 7378, John Doe 4 is the owner of the Chase Account 5152, and John Doe 5 is the person who directed the alleged fraudulent scheme, including instructing John Doe 1, John Doe 2, John Doe 3, and John Doe 4 as to receipt and distribution of the proceeds of the ACH Transfers.

[¶17]   The Court finds the likelihood of success on the merits weighs in favor of issuing a temporary restraining order against the Defendants. Based on the limited record before the Court, it appears that Defendants John Does 1 through 5 committed predicate acts under RICO of wire fraud, mail fraud, and money laundering, engaged in fraud and deceit, have been unjustly enriched, diverted and converted funds intended to be paid to Shin Il as part of business transactions through the use of false emails and hacking of email accounts, and have engaged in a civil conspiracy to deceive Plaintiff and fraudulently obtain funds from Plaintiff.

[¶18]   These claims, if true, are actionable under RICO. 18 U.S.C. § 1961, *et seq.* (civil RICO); 18 U.S.C. § 1962(c) (RICO renders it unlawful for any person to directly or indirectly engage in conduct of an enterprise through a pattern of racketeering activity); 18 U.S.C. § 1964(c) (private right of action for persons injured by RICO violations); 18 U.S.C. § 1961(1) (wire fraud, mail fraud, and money laundering are predicate acts under RICO); 18 U.S.C. § 1956(a)(2)(A) (money laundering); 18 U.S.C. § 1343 (wire fraud); and 18 U.S.C. § 1341 (mail fraud).

[¶19]   The allegations would also support claims under North Dakota law for fraud, unjust enrichment, constructive trust, and civil conspiracy. Northstar Founders, LLC v. Hayden Cap. USA, LLC, 2014 ND 200, ¶ 27, 855 N.W.2d 614 ("A tort action for fraud requires a contract between the parties; a misrepresentation of facts, suppression of facts, misleading another, or promising without an intent to perform; reliance on the false or misleading representation; and proof of actual damages proximately caused by the misrepresentation or nondisclosure." (Citations omitted.)); Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc., 2004 ND 117, ¶ 26, 680 N.W.2d 634 ("Unjust enrichment requires: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification for the enrichment and impoverishment; and (5) an absence of remedy provided by law. The doctrine of unjust enrichment

may be invoked when a person has and retains money or benefits which in justice and equity belong to another." (citations and quotations omitted.)); Schroeder v. Buchholz, 2001 ND 36, ¶ 5, 622 N.W.2d 202 ("A constructive trust is an equitable remedy to compel a person who unfairly holds a property interest to convey such interest to the rightful owner. [Cit.] A constructive trust is imposed to prevent the unjust enrichment of the person wrongfully interfering with the owner's possession of the property. [Cit.]" (Citations and quotations omitted.)); Peterson v. North Dakota Univ. Sys., 2004 ND 82, ¶ 27, 678 N.W.2d 163 ("A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damage[s]." (alteration in original) (quotation marks omitted)).

[¶20]   Plaintiff has produced affidavits to support each claim asserted in the Complaint. If Plaintiff's allegations of obtaining funds under false pretenses prove to be true, then these claims have a strong likelihood of success. The Court finds the "likelihood of success on the merits" factor strongly weighs in favor of issuance of an *ex parte* temporary restraining order.

### III.   Threat of Irreparable Harm

[¶21]   Plaintiff must establish there is a threat of irreparable harm if injunctive relief is not granted, and that such harm is "harm that could not be sufficiently compensated by money damages or avoided by a later decision on the merits." Canon, Inc. v. GCC Int'l, Ltd., 263 F. App'x. 57, 62 (Fed. Cir. 2008).

[¶22]   The Court recognizes that ordinarily, harm suffered that "is quantifiable and compensable with money damages" is not an irreparable harm. MPAY Inc. v. Erie Custom Computer Applications, Inc., 970 F.3d 1010 (8th Cir. 2020). While the harm alleged here is quantifiable and

potentially compensable, the Plaintiffs have shown that, absent an injunction, there is a real threat they will not be able to recover anything from the Defendants. Indeed, an award of money damages against parties who would, as alleged by Plaintiff, use false identities and email hacking to divert proceeds of a business sale to divert funds to a bank account unrelated to the transaction, would likely be worthless and not sufficient to remedy the Plaintiff's injury. If these allegations are true, then the perpetrators of such a scheme will launder funds to bring them beyond the reach of the Court. While monetary relief is a remedy, it is not an adequate legal remedy under these circumstances. Deckert v. Indep. Shares Corp., 311 U.S. 282, 290 (1940) (legal remedy inadequate without recourse to funds in the hands of defendant where assets were "in danger of dissipation and depletion"); Airlines Reporting Corp. v. Barry, 825 F.2d 1220, 1227 (8th Cir. 1987) (danger of depletion or dissipation of assets a factor to consider in whether plaintiff has shown irreparable harm).

[¶23]   Based upon the record, the injury to Plaintiff is irreparable in the absence of issuance of a temporary restraining order. The funds which Plaintiff contends were obtained under false pretenses could be moved beyond the reach of Plaintiff and the Court absent immediate Court intervention. Accordingly, the Court finds the irreparable harm factor weighs in favor of issuance of an *ex parte* temporary restraining order.

    **IV.**    **Balance of Harms**

[¶24]   The balance of harms factor requires consideration of the balance between the harm to the movant and the harm the injunction's issuance would inflict on other interested parties. Pottgen v. Missouri State High Sch. Activities Ass'n, 40 F.3d 926, 929 (8th Cir.1994).

[¶25]   Based on the limited record before the Court, it does not appear that the temporary restraining order Plaintiff seeks will harm Defendants John Does 1 through 5. The record shows

these parties have no relationship with the business transactions between Plaintiff and Shin Il. If these parties claim some right to these funds sent by Plaintiff, they will have the opportunity to assert these rights in this Court. Any harm from having the account funds frozen as well as other assets to allow discovery as to where Shin Il's funds were transferred is substantially outweighed by the risk of harm of dissipation of the Plaintiff's funds. Accordingly, the Court finds the balance of harms factor weighs in favor of issuance of an *ex parte* temporary restraining order.

### V.   Public Interest

[¶26]   The public interest factor, "invites the court to indulge in broad observations about conduct that is generally recognizable as costly or injurious" and also to reference "more concrete considerations, such as reference to the purposes and interests any underlying legislation was intended to serve, [and] a preference for enjoining inequitable conduct." Prudential Ins. Co. of Am. v. Inlay, 728 F. Supp. 2d 1022, 1032 (N.D. Iowa 2010) (citations omitted). The public interest clearly disfavors allowing perpetrators of fraud to obtain funds under false pretenses, and disfavors allowing such actors to keep or dissipate these funds. Accordingly, the Court finds the public interest factor weighs in favor of issuance of an *ex parte* temporary restraining order.

### VI.   *Ex Parte* Nature of Order

[¶27]   Rule 65 of the Federal Rules of Civil Procedure requires that counsel for the movant certify in writing the efforts made to give notice or the reasons why notice should not be required. Counsel for Plaintiff, Mark Lefkow, filed a declaration attesting that providing advance notice to Defendants and to the bank to which Shin Il's funds were transferred, would frustrate the Plaintiff's ability to obtain relief. Doc. No. 8-5. If the Defendants are notified of these proceedings prior to this Order becoming effective they will likely abscond with the funds transferred to the BOA Account, the Chase Account 6375, the Chase Account 7378, and the Chase Account 5152.

[¶28]   Accordingly, it is appropriate to issue this Order *ex parte*. See <u>Benefits Admin. Comm. of Brush Aftermarket N. Am., Inc. Grp. Pension Plan v. Wencl</u>, No. 16-CV-2794 (WMW/BRT), 2016 WL 8809478, at *3 (D. Minn. Aug. 22, 2016) (awarding *ex parte* injunctive relief where there was a potential for defendant to engage in efforts to dissipate funds that were subject of requested injunctive relief).

## **CONCLUSION**

[¶29]   The Court has reviewed the entire record and the factors for granting an *ex parte* Temporary Restraining Order and finds the Plaintiff has met its burden under Rule 65(b) of establishing the necessity of an *ex parte* temporary restraining order at this early stage of the litigation. Driving the Court's conclusions is the undeniable need to preserve the *status quo* during this initial phase of the litigation. Absent a temporary restraining order, the risk of permanently losing approximately $1,000,000 without recovery is significant.

[¶30]   Accordingly, the Plaintiff's Motion for a Temporary Restraining Order is **GRANTED**. It is therefore **ORDERED**:

1. The holders, beneficial owners, and authorized users of the Bank of America, account number xxxxxxxx9292, JPMorgan Chase Bank, account number xxxxx6375, JPMorgan Chase Bank, account number xxxxx7378, and JPMorgan Chase Bank, account number xxxxx5152 (the "Enjoined Accounts"), and all persons acting in concert and in active participation with the foregoing, including but not limited to the financial institution(s) holding such accounts that receive actual notice of this Order by service of process or otherwise, **ARE HEREBY RESTRAINED**, without prior approval from the Court from distributing, withdrawing, transferring, disposing of, converting, secreting any money, negotiating funds, allowing distributions, allowing withdrawals, allowing transfers, and allowing negotiation of funds in or from the Enjoined Account and any proceeds from the Enjoined Account received on or after December 1, 2023.

2. The holders, beneficial owners, and authorized users of all other accounts in the names of one or more of the holders, beneficial owners, and authorized users of the BOA Account, the Chase Account 6375, the Chase Account 7378, and the Chase Account 5152 (the "Additionally Enjoined Accounts") and all persons acting in concert and in active participation with the foregoing, including but not limited to the financial

    institution(s) holding such accounts that receive actual notice of this Order by service of process or otherwise, **ARE HEREBY RESTRAINED**, without prior approval from the Court from distributing, withdrawing, transferring, disposing of, converting, secreting any money, negotiating funds, allowing distributions, allowing withdrawals, allowing transfers, and allowing negotiation of funds in or from the Additionally Enjoined Accounts or any proceeds from the Additionally Enjoined Accounts received on or after December 1, 2023.

3. The Court limits the amount of funds that may be frozen in any one individual account or asset to the sum of $1,051,660.

4. To the extent that any of the Enjoined Accounts or Additionally Enjoined Accounts are correspondent accounts held for foreign banking institutions or money transfer services, then this inunction shall apply only to the extent of the funds remaining in the accounts from the ACH transactions initiated by Doosan set forth above after good faith consultation with the accountholder.

[¶ 33]   The Court **FURTHER ORDERS** as follows:

1. The Court will hold a hearing on Monday, August 26, 2024, at 1:30 p.m. in Courtroom 1 of the United States District Court for District of North Dakota, William L. Guy Federal Bldg., U.S. Courthouse, 220 East Rosser Ave. #476, Bismarck, ND 58502, regarding the status of the injunction, unless any party requests an earlier hearing.

2. Plaintiff is directed to provide a copy of this Order to the known enjoined parties and non-parties as soon as feasible, but no later than five days prior to the hearing. Because Plaintiff does not know the name of the holder of the BOA Account, the Chase Account 6375, the Chase Account 7378, and the Chase Account 5152 or the Additionally Enjoined Accounts, upon receiving a copy of this Order, the Bank of America and JPMorgan Chase Bank and any other banks notified shall notify the holders of the BOA Account, the Chase Account 6375, the Chase Account 7378, and the Chase Account 5152 and any other accounts that are the subject of this Order and provide a copy of this Order to the holder of the account.

3. At the hearing, Plaintiff shall be prepared to show cause why a preliminary injunction should be issued. If Plaintiff fails to do so, "the court must dissolve the [restraining] order." Fed. R. Civ. P. 65(b)(3). The Defendants and any non-parties enjoined shall be prepared to show cause why they should not be preliminarily enjoined during the pendency of this action.

4. At any time, the Defendants and any non-parties enjoined may file a motion to dissolve or modify this temporary restraining order in accordance with Rule 65(b)(4) of the Federal Rules of Civil Procedure. They may also contact the Court to modify the time or date of the scheduled hearing.

5. This Temporary Restraining Order will become effective, as to each party and non-party enjoined, upon delivery of notice of the Order on each such person and entity by service of process or other method reasonably calculated to give notice. Fed. R. Civ. P. R. 65(a).

6. Plaintiff shall promptly file proof of service or other such notice to enjoined parties, accountholders, and banking institutions with the Court.

7. Plaintiff shall promptly notify the Court of the amount of funds found and frozen pursuant to the terms of this Order.

8. The Court orders no bond in this case.

9. In accordance with Rule 65(b)(2) of the Federal Rules of Civil Procedure, this Order expires in 14 days at the same hour of this Order, "unless before that time the Court, for good cause, extends it for a like period or the adverse party consents to a longer extension."

[¶ 34]  **IT IS SO ORDERED**

[¶ 35]  DATED August 14, 2024, at 4:40 p.m.

Daniel M. Traynor, District Judge
United States District Court