IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Doosan Bobcat North America, Inc.,<br><br>                                              Plaintiff,<br><br>vs.<br><br>F&C Serving, LLC; ANF Group, LLC; Kelly James; Mega Contracting Group, LLC; and John Doe 5,<br><br>                                               Defendants. | Case No. 1:24-cv-00152 |

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

[¶ 1]   THIS MATTER comes before the Court on a Motion for Preliminary Injunction by the Plaintiff on August 14, 2024. Doc. No. 11. The Motion is supported by the declarations of Doosan's employee, and Attorney Mark Lefkow, pursuant to Federal Rule of Civil Procedure 65, and Plaintiff's Complaint for Damages and Injunctive Relief. Plaintiff seeks a preliminary injunction pursuant to Rule 65(a).

[¶ 2]   The Court granted the Motion for Temporary Restraining Order and issued an Order Granting Motion for Temporary Restraining Order ("Temporary Restraining Order") for a period of fourteen days on August 14, 2024. Doc. No. 10. The Court extended the Temporary Restraining Order for an additional period of fourteen days on August 26, 2024. Doc. No. 16. The Court held hearings on August 26, 2024, and September 9, 2024.

[¶ 3]   Plaintiff gave notice of the Temporary Restraining Order, Order Extending Temporary Restraining Order, and the September 9, 2024, hearing to Francisco Castillo and F&C Serving, LLC (Doc. No. 18-1), to Huntington Bank (Doc. No. 18-2), to Bank of America (Docs. Nos. 10-

1, 18-3), to JPMorgan Chase Bank (Docs. Nos. 10-2, 18-4), to Kelly James, and ANF Group, LLC (Doc. No. 18-7).

[¶ 4]     No party appeared to contest the relief sought in the Motion for Temporary Restraining Order or Motion for Preliminary Injunction, and Plaintiff updated the Court regarding evidence collected in discovery, including introducing records obtained from Bank of America and Chase Bank (Doc. No. 18) and the Declaration of Francisco Castillo, the sole member of F&C Serving, LLC, the owner of the BOA 9292 Account (Doc. No. 19). For the reasons set forth below, the Motion for Preliminary Injunction is **GRANTED**.

## BACKGROUND

[¶ 5]     The findings in this order are not final and subject to revision based upon the evidence as it comes in during the pendency of this case. Plaintiff is headquartered in North Dakota. Doc. No. 8-2, p. 5. Plaintiff conducted business with Shin Il Precision Co., Ltd. and Shin Il Global (collectively "Shin Il"), two suppliers located in South Korea. Doc. No. 8-2, p. 1. In connection with the business relationship between Doosan and Shin Il, Doosan communicated with different people from Shin Il, with email addresses ending with @shinil-brg.com. Id. On December 19, 2023, Doosan's accounting department received an email from a person who appeared to be a Sales Team Manager at Shin Il, from the email account nckim@shinil-brg.com, instructing Doosan to make future payments through ACH to a bank account with the Bank of America, account number xxxxxxxx9292 (the "BOA Account 9292"). Id. at p. 2; Doc. No. 8-3, pp. 1-2.

[¶ 6]     Pursuant to the fraudulent ACH Instructions, Doosan made five payments to the BOA Account 9292. On December 23, 2023, Doosan Sent $97,710 to the BOA Account 9292 via ACH; on February 8, 2024, Doosan sent $81,760 to the BOA Account 9292 via ACH; on March 7, 2024, Doosan sent $89,450 to the BOA Account 9292 via ACH; and on March 21, 2024, Doosan sent

$166,950 to the BOA Account 9292 via ACH. Id. at pp. 2-3. Doosan sent a total of $520,350 to the BOA Account 9292 (the "ACH Transfers"). Id. at p. 3; Doc. No. 8-4.

[¶ 7]     On March 26, 2024, Doosan's accounting department received an email from the same person who appeared to be a Sales Team Manager at Shin Il, from the email account nckim@shinil-brg.com, inquiring about future payments to Shin Il. Doc. No. 8-2, p. 3. After inquiring about the future payments, the person who appeared to be a representative of Shin Il stated that Shin Il experienced a glitch with its account with Bank of America, and instructed Doosan to make future payments through ACH (the "ACH Instructions") to a bank account with JPMorgan Chase Bank, account number xxxxx6375 (the "Chase Account 6375"). Id. at p. 3; Doc. No. 8-3, pp. 3-6.

[¶ 8]     Pursuant to these fraudulent ACH Instructions, Doosan made four payments to the Chase Account 6375. On March 28, 2024, Doosan sent $85,640 to the Chase Account 6375; on April 11, 2024, Doosan sent $176,510 to the Chase Account 6375; on April 18, 2024, Doosan sent $ 92,520 to the Chase Account 6375; and on May 2, 2024, Doosan sent $84,250 to the Chase Account 6375. Doc. No. 8-2, pp. 3-4. Doosan sent a total of $438,920 to the Chase Account 6375 (the "ACH Transfers"). Id. at p. 4; Doc. No. 8-4.

[¶ 9]     On May 21, 2024, Doosan's accounting department received an email from the same person who appeared to be a Sales Team Manager at Shin Il, from the email account nckim@shinil-brg.com, representing that they experienced a glitch with their Chase Account 6375, and instructing Doosan to make future payments through ACH to a bank account with JPMorgan Chase Bank, account number xxxxx7378 (the "Chase Account 7378"). Doc. Nos. 8-2, p. 4, 8-3, pp. 7-10.

[¶7]   On May 29, 2024, Doosan's accounting department received an email from the same person who appeared to be a Sales Team Manager at Shin Il, from the email account nckim@shinil-brg.com, representing that they were experiencing some issues with the Chase Account 7378, and

instructing Doosan to make future payments through ACH to a bank account with JPMorgan Chase Bank, account number xxxxx5152 (the "Chase Account 5152"). Doc. Nos. 8-2, pp. 4-5, Doc. No. 8-3, pp. 11-12.

[¶ 10]   Pursuant to this fraudulent ACH Instructions, Doosan made one payment to the Chase Account 5152. On June 6, 2024, Doosan sent $92,390 to the Chase Account 5152 via ACH. Doc. Nos. 8-2, p. 5, 8-4.

[¶ 11]   After making these payments, Doosan learned that the BOA Account 9292, Chase Account 6375, Chase Account 7378, and Chase Account 5152 did not belong to the intended beneficiary of funds for the contemplated business transactions, Shin Il. Doc. No. 8-2, p. 5. The ACH Instructions were false. Id. As a result, Shin Il did not receive the funds sent by Doosan. Doc. No. 8-2.

[¶ 12]   BOA's records show that the BOA Account 9292 is in the name of F&C Serving, LLC, whose sole member is Francisco Castillo. Doc. No. 18-8.

[¶ 13]   BOA records show that Plaintiff transmitted the sum of $166,950 by ACH ("March 2024 ACH") to the BOA Account 9292 on March 21, 2024. Doc. No. 18-8, p. 7. These funds from the March 2024 ACH remained in the BOA Account 9292 until June 3, 2024, when BOA's fraud department closed the account and removed the sum of $168,820 from the account in what it termed a "CLAIMS PROCESSING TRANSACTION." Doc. No. 19, ¶¶ 10, 11. Mr. Castillo attests by declaration under penalty of perjury that neither he nor his company, F&C Serving, LLC, received the funds from the Claims Processing Transaction. Doc. No. 19, ¶ 11.

[¶ 14]   Plaintiff served a subpoena to Bank of America for a witness to attend the hearing on September 9, 2024, and produce the following documents:

   **Claims Processing Transaction Records:**

> a. Records relating to the June 3, 2024 Claims Processing Transaction contained on an[] account statement for the 9292 Account, and disposition of the funds from the Claims Processing Transaction.

Doc. No. 18-3, pp. 1, 2, 6-8.

[¶ 15] JPMorgan Chase Bank's records confirm that the Chase Account 5152 is in the name of Mega Contracting Group, LLC, whose sole member is Mary Elizabeth Wicks. Doc. No. 18-5. Plaintiff reports that Ms. Wicks appears to be deceased. Doc. No. 18.

[¶ 16] JPMorgan Chase Bank's records confirm that the Chase Account 6375 is in the name of ANF Group, LLC, whose sole member is Kelly James. Doc. No. 18-6.

[¶ 17] Plaintiff stipulates that the funds in the Chase Account 7378 are not traceable to Plaintiff's funds. Doc. No. 18.

[¶ 18] The Complaint alleges claims for violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), for fraud, for money had and received, for civil conspiracy, and for permanent injunctive relief against the accountholders and other parties to the alleged fraud. Doc. No. 1.

## DISCUSSION

### I. Standard of Review

[¶ 19] Rule 65(a) of the Federal Rules of Civil Procedure governs the issuance of preliminary injunctions, providing, "[t]he court may issue a preliminary injunction only on notice to the adverse party." The Court finds that Plaintiff gave notice to the adverse parties and parties whose rights may be affected by the preliminary relief it seeks, including F&C Serving, LLC, Francisco Castillo, Bank of America Corporation, JPMorgan Chase Bank, Kelly James, ANF Group, LLC.

[¶ 20] "The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." Rathmann Grp. v. Tanenbaum, 889

F.2d 787, 789–90 (8th Cir. 1989) (quoting Ferry-Morse Seed Co. v. Food Corn, Inc., 729 F.2d 589, 593 (8th Cir. 1984)).

[¶ 21]   The Court is required to balance four factors when deciding whether to grant a preliminary injunction: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest." Home Instead, Inc. v. Florance, 721 F.3d 494, 497 (8th Cir. 2013) (quoting Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981)); Wilbur-Ellis Co., LLC v. Erikson, 103 F.4th 1352, 1355–56 (8th Cir. 2024).

### II. Likelihood of Success on the Merits

[¶ 22]   "While 'no single factor is determinative,' the probability of success factor is the most significant." Home Instead, 721 F.3d at 497 (quoting Dataphase, 640 F.2d at 113); Craig v. Simon, 980 F.3d 614, 617 (8th Cir. 2020); Shrink Mo. Gov't PAC v. Adams, 151 F.3d 763, 764 (8th Cir. 1998)). This factor is met where there is a "strong likelihood that [Plaintiffs] will prevail when the case is heard on the merits." Shrink Mo., 151 F.3d at 764.

[¶ 23]   The Court must consider the substantive claims in determining whether Plaintiff has a likelihood of success on the merits. Plaintiff asserts claims for civil RICO, fraud, unjust enrichment, constructive trust, civil conspiracy, and injunctive relief against the Defendants. Per Bank of America records, F&C Serving, LLC, is the owner of the BOA Account 9292. Doc. No. 18-8. Per JPMorgan Chase Bank records, Chase Account 5152 is in the name of Mega Contracting Group, LLC, whose sole member was Mary Elizabeth Wicks. Doc. No. 18-5. Per JPMorgan Chase Bank records, the Chase Account 6375 is in the name of ANF Group, LLC, whose sole member is Kelly James. Doc. No. 18-6.

[¶ 24]   The Court finds the likelihood of success on the merits weighs in favor of issuing a preliminary injunction against the Defendants. Based on the records submitted to the Court, it appears that F&C Serving, LLC, ANF Group, LLC, Kelly James, and Mega Contracting Group, LLC, along with co-conspirators, received funds from Plaintiff intended for Shin Il that were diverted through various means. The limited record before the Court supports a strong likelihood of success on Plaintiff's claims that these parties committed predicate acts under RICO of wire fraud, mail fraud, and money laundering, engaged in fraud and deceit, have been unjustly enriched, diverted and converted funds intended to be paid to Shin Il as part of business transactions through the use of false emails and hacking of email accounts, and have engaged in a civil conspiracy to deceive Plaintiff and fraudulently obtain funds from Plaintiff.

[¶ 25]   These claims, if true, are actionable under RICO. 18 U.S.C. § 1961, *et seq.* (civil RICO); 18 U.S.C. § 1962(c) (RICO renders it unlawful for any person to directly or indirectly engage in conduct of an enterprise through a pattern of racketeering activity); 18 U.S.C. § 1964(c) (private right of action for persons injured by RICO violations); 18 U.S.C. § 1961(1) (wire fraud, mail fraud, and money laundering are predicate acts under RICO); 18 U.S.C. § 1956(a)(2)(A) (money laundering); 18 U.S.C. § 1343 (wire fraud); and 18 U.S.C. § 1341 (mail fraud).

[¶ 26]   The allegations would also support claims under North Dakota law for fraud, unjust enrichment, constructive trust, and civil conspiracy. Northstar Founders, LLC v. Hayden Cap. USA, LLC, 2014 ND 200, ¶ 27, 855 N.W.2d 614 ("A tort action for fraud requires a contract between the parties; a misrepresentation of facts, suppression of facts, misleading another, or promising without an intent to perform; reliance on the false or misleading representation; and proof of actual damages proximately caused by the misrepresentation or nondisclosure." (Citations omitted.)); Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc., 2004 ND 117, ¶ 26, 680 N.W.2d 634

("Unjust enrichment requires: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification for the enrichment and impoverishment; and (5) an absence of remedy provided by law. The doctrine of unjust enrichment may be invoked when a person has and retains money or benefits which in justice and equity belong to another." (citations and quotations omitted.)); Schroeder v. Buchholz, 2001 ND 36, ¶ 5, 622 N.W.2d 202 ("A constructive trust is an equitable remedy to compel a person who unfairly holds a property interest to convey such interest to the rightful owner. [Cit.] A constructive trust is imposed to prevent the unjust enrichment of the person wrongfully interfering with the owner's possession of the property. [Cit.]" (Citations and quotations omitted.)); Peterson v. North Dakota Univ. Sys., 2004 ND 82, ¶ 27, 678 N.W.2d 163 ("A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damage[s]." (alteration in original) (quotation marks omitted)).

[¶ 27]    Plaintiff has produced affidavits and banking records to support each claim asserted in the Amended Complaint. If Plaintiff's allegations of obtaining funds under false pretenses prove to be true, then these claims have a strong likelihood of success. The Court finds the "likelihood of success on the merits" factor strongly weighs in favor of issuance of a preliminary injunction.

### III. Threat of Irreparable Harm

[¶ 28]    Plaintiff must establish there is a threat of irreparable harm if injunctive relief is not granted, and that such harm is "harm that could not be sufficiently compensated by money damages or avoided by a later decision on the merits." Canon, Inc. v. GCC Int'l, Ltd., 263 F. App'x. 57, 62 (Fed. Cir. 2008).

[¶ 29]   The Court recognizes that ordinarily, harm suffered that "is quantifiable and compensable with money damages" is not an irreparable harm. MPAY Inc. v. Erie Custom Computer Applications, Inc., 970 F.3d 1010 (8th Cir. 2020). While the harm alleged here is quantifiable and potentially compensable, the Plaintiffs have shown that, absent an injunction, there is a real threat they will not be able to recover anything from the Defendants. Indeed, an award of money damages against parties who would, as alleged by Plaintiff, use false identities and email hacking to divert proceeds of a business sale to divert funds to a bank account unrelated to the transaction, would likely be worthless and not sufficient to remedy the Plaintiff's injury. If these allegations are true, then the perpetrators of such a scheme will launder funds to bring them beyond the reach of the Court. While monetary relief is a remedy, it is not an adequate legal remedy under these circumstances. Deckert v. Indep. Shares Corp., 311 U.S. 282, 290 (1940) (legal remedy inadequate without recourse to funds in the hands of defendant where assets were "in danger of dissipation and depletion"); Airlines Reporting Corp. v. Barry, 825 F.2d 1220, 1227 (8th Cir. 1987) (danger of depletion or dissipation of assets a factor to consider in whether plaintiff has shown irreparable harm).

[¶ 30]   Based upon the record before the Court, the injury to Plaintiff is irreparable in the absence of issuance of a preliminary injunction. The funds which Plaintiff contends were obtained under false pretenses could be moved beyond the reach of Plaintiff and the Court absent immediate Court intervention. Accordingly, the Court finds the irreparable harm factor weighs in favor of issuance of a preliminary injunction.

### IV. Balance of Harms

[¶ 31]   The balance of harms factor requires consideration of the balance between the harm to the movant and the harm the injunction's issuance would inflict on other interested parties. Pottgen v. Missouri State High Sch. Activities Ass'n, 40 F.3d 926, 929 (8th Cir.1994).

[¶ 32]   Based on the limited record before the Court, it does not appear that the preliminary injunction Plaintiff seeks will harm F&C Serving, LLC, ANF Group, LLC, Kelly James, and Mega Contracting Group, LLC, their co-conspirators. The record shows these parties have no relationship with the business transactions between Plaintiff and Shin Il. If these parties claim some right to these funds sent by Plaintiff, they will have the opportunity to assert these rights in this Court. Any harm from having the account funds frozen as well as other assets to allow discovery as to where Plaintiff's funds were transferred is substantially outweighed by the risk of harm of dissipation of the Plaintiff's funds.

[¶ 33]   The Court also finds that the preliminary injunction Plaintiff seeks will harm the banking institutions at which F&C Serving, LLC, ANF Group, LLC, Kelly James, and Mega Contracting Group, LLC banked, including Bank of America, JPMorgan Chase Bank, and Huntington Bank. These banks were given notice of Plaintiff's request for a preliminary injunction and these proceedings (Doc. No. 18), and did not object. The owner of the BOA Account 9292, F&C Serving, LLC, affirmed and directed BOA that the funds in that account should be transmitted to Plaintiff and that F&C Serving, LLC, claims no ownership interest in those funds. Doc. No. 19.

[¶ 34]   Accordingly, the Court finds the balance of harms factor weighs in favor of issuance of a preliminary injunction.

### V. Public Interest

[¶ 35]     The public interest factor, "invites the court to indulge in broad observations about conduct that is generally recognizable as costly or injurious" and also to reference "more concrete considerations, such as reference to the purposes and interests any underlying legislation was intended to serve, [and] a preference for enjoining inequitable conduct." Prudential Ins. Co. of Am. v. Inlay, 728 F. Supp. 2d 1022, 1032 (N.D. Iowa 2010) (citations omitted). The public interest clearly disfavors allowing perpetrators of fraud to obtain funds under false pretenses, and disfavors allowing such actors to keep or dissipate these funds. Accordingly, the Court finds the public interest factor weighs in favor of issuance of a preliminary injunction.

### **CONCLUSION**

[¶ 36]     The Court has reviewed the entire record and the factors for granting a preliminary injunction at this early stage of the litigation. Driving the Court's conclusions is the undeniable need to preserve the *status quo* during this initial phase of the litigation. Absent a preliminary injunction, the risk of permanently losing approximately $1,000,000 without recovery is significant.

[¶ 37]     Accordingly, the Plaintiff's Motion for a Preliminary Injunction is **GRANTED**. It is therefore **ORDERED**:

>    1. The holders, beneficial owners, and authorized users of the Bank of America, account number xxxxxxxx9292, Bank of America account number xxxxxxxx2871, Huntington Bank account number xxxxxxx1238, JPMorgan Chase Bank, account number xxxxx6375, and JPMorgan Chase Bank, account number xxxxx5152 (the "Enjoined Accounts"), and all persons acting in concert and in active participation with the foregoing, including but not limited to the financial institution(s) holding such accounts that receive actual notice of this Order by service of process or otherwise, **ARE HEREBY RESTRAINED**, without prior approval from the Court from distributing, withdrawing, transferring, disposing of, converting, secreting any money, negotiating funds, allowing distributions, allowing withdrawals, allowing transfers, and allowing negotiation of funds in or from the Enjoined Account and any proceeds from the Enjoined Account received on or after December 1, 2023.

2. The holders, beneficial owners, and authorized users of all other accounts in the names of one or more of the holders, beneficial owners, and authorized users of the BOA Account 9292, the BOA Account 2871, the Huntington Account 1238, the Chase Account 6375, and the Chase Account 5152 (the "Additionally Enjoined Accounts") and all persons acting in concert and in active participation with the foregoing, including but not limited to the financial institution(s) holding such accounts that receive actual notice of this Order by service of process or otherwise, **ARE HEREBY RESTRAINED**, without prior approval from the Court from distributing, withdrawing, transferring, disposing of, converting, secreting any money, negotiating funds, allowing distributions, allowing withdrawals, allowing transfers, and allowing negotiation of funds in or from the Additionally Enjoined Accounts or any proceeds from the Additionally Enjoined Accounts received on or after December 1, 2023.

3. The Court limits the amount of funds that may be frozen in any one individual account or asset to the sum of $1,051,660.

4. To the extent that any of the Enjoined Accounts or Additionally Enjoined Accounts are correspondent accounts held for foreign banking institutions or money transfer services, then this inunction shall apply only to the extent of the funds remaining in the accounts from the ACH transactions initiated by Doosan set forth above after good faith consultation with the accountholder.

5. Within twenty-one days of this Order, Bank of America shall either: (1) in accordance with Local General Rule 1.10(A)(1), remit to the local registry of the Court the sum of $168,820, which represents funds removed by Bank of America from the BOA Account 9292 in June 2024 pursuant to a Claims Processing Transaction, or (2) file a Motion and Brief asserting legal grounds for why it should not be required to do so. Plaintiff shall have ten business days to respond to any such motion filed by Bank of America. In the event Bank of America deposits the sum of $168,820 with the Court, the check shall be made payable to the United States District Court and must be forwarded to the Clerk's Office for deposit.

[¶ 38] The Court **FURTHER ORDERS** as follows:

1. Plaintiff is directed to provide a copy of this Order to the known enjoined parties and non-parties as soon as feasible.

2. At any time, the Defendants and any non-parties enjoined may file a motion to dissolve or modify this preliminary injunction.

3. This Preliminary Injunction will become effective, as to each party and non- party enjoined, upon delivery of notice of the Order on each such person and entity by service of process or other method reasonably calculated to give notice. Fed. R. Civ. P. R. 65(a).

- 13 -

4. Plaintiff shall promptly file proof of service or other such notice to enjoined parties, accountholders, and banking institutions with the Court.

5. Plaintiff shall promptly notify the Court of the amount of funds found and frozen pursuant to the terms of this Order.

6. The Court orders no bond in this case.

7. This Order shall remain in effect until the earlier of dismissal of this case or further order of the Court.

[¶ 39]  **IT IS SO ORDERED.**

[¶ 34]  DATED September 9, 2024.

                                                     Daniel M. Traynor, District Judge
                                                     United States District Court